# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Karen P.,[1]

                                  Plaintiff,

       v.                                     3:25-cv-81
                                              (MJK)


Commissioner of Social Security

                                    Defendant.

---

Howard Olinsky, Esq., for Plaintiff
Molly Carter, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Karen P. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Karen P. consented to the jurisdiction of a Magistrate Judge. (Dkt. 4). Both parties filed briefs (Dkts. 11, 17, 18) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] This Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial to protect her privacy.

## I.    PROCEDURAL HISTORY

On July 31, 2023, Karen P. filed applications for Disability
Insurance Benefits ("DIB), and Supplemental Security Income ("SSI"),
alleging disability beginning September 1, 2022. (T. 10).[2] Both
applications were initially denied on December 23, 2023, and upon
reconsideration on April 12, 2024. (T. 10). On October 9, 2024,
Administrative Law Judge ("ALJ") Kenneth Theurer held a virtual
hearing during which Karen P. and Vocational Expert ("VE"), Christine
DiTrinco, testified. (T. 45-63). On July 29, 2024, the ALJ issued a
decision denying Karen P.'s claims. (T. 32, 30). This became the
Commissioner's final decision after the Appeals Council denied Karen
P.'s request for review. (T. 1-3).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standards

To be considered disabled, a claimant seeking DIB or SSI benefits
must establish that they are "unable to engage in any substantial
gainful activity by reason of any medically determinable physical or

---

[2] All page references are to the Administrative Transcript ("T."), and not the page
numbers assigned by the CM/ECF pagination system.

mental impairment which can be expected to result in death, or which

has lasted or can be expected to last for a continuous period of not less

than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A). Additionally, the

claimant's

> physical or mental impairment or impairments [must be] of
> such severity that they are not only unable to do their
> previous work but cannot, considering their age, education,
> and work experience, engage in any other kind of substantial
> gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which
> they live, or whether a specific job vacancy exists for them, or
> whether they would be hired if they applied for work.

42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

The Commissioner uses a five-step process, set forth in 20 C.F.R.

sections 404.1520 (for DIB) and 416.920 (for SSI), to evaluate disability

claims:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If [they are]
> not, the [Commissioner] next considers whether the claimant
> has a "severe impairment" which significantly limits [their]
> physical or mental ability to do basic work activities. If the
> claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has
> an impairment which meets or equals the criteria of an
> impairment listed in Appendix 1 of the regulations. If the
> claimant has such an impairment, the [Commissioner] will
> consider [them] disabled without considering vocational
> factors such as age, education, and work experience . . . .
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe

3

impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see*

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675

F.2d at 467). The claimant has the burden of establishing disability at

the first four steps. *Berry*, 675 F.2d at 467. If the claimant establishes

that their impairment prevents them from performing their past work,

then the burden shifts to the Commissioner to prove the fifth and final

step. *Id.*

### B.    Scope of Review

When reviewing a final decision of the Commissioner, courts must

determine whether the correct legal standards were applied and

whether substantial evidence supported the decision. *Id.* at 417; *see also*

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42

U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative

record. *Id.* Yet this standard is a very deferential standard of review "—even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v.*

*Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

The record includes Karen P.'s medical treatment records, which the parties are familiar with. The Court will refer to the pertinent records and Karen P.'s hearing testimony in its analysis as appropriate.

## IV.  THE ALJ'S DECISION

At step one of the five-step sequential evaluation, the ALJ determined that Karen P. had not engaged in substantial gainful activity since September 1, 2022. (T. 13).

At step two, the ALJ found that Karen P. had the following severe impairments: "depressive disorder, anxiety disorder, osteoarthritis of the lumbar spine, Turner syndrome, and disorder of the hip. (*Id.*). The ALJ found that Karen P. had the following nonsevere impairments: hypothyroidism, bilateral sensorineural hearing loss, vision problems, heart problems associated with Turner syndrome, urinary tract issues, and obesity. (T. 13-16).

At step three, the ALJ determined that Karen P.'s impairments neither meet nor medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 17).

Next, the ALJ discussed the "paragraph B" criteria. (T. 14-15). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, the ALJ found that Karen P. did not meet the "paragraph B" criteria because they determined that Karen P. had only mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing herself. (T. 18).

The ALJ also considered the "paragraph C" criteria. (T. 19). The "paragraph C" criteria require a documented medical history of the

existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). The ALJ noted that the "paragraph C" criteria were not met. (*Id.*).

Next, the ALJ determined that Karen P. had the residual functional capacity ("RFC") to perform:

> light work except [Karen P.] has additional limitations or restrictions: can occasionally lift and carry twenty pounds; can frequently lift and carry ten pounds; can sit for up to six hours and can stand or walk for approximately four hours in an eight-hour day with normal breaks; can occasionally climb ramps or stairs; can never climb ladders, ropes or scaffolds; can perform occasional balancing, stooping, kneeling, crouching, and crawling; requires work limited to carrying out simple instructions in a work environment; requires work involving only simple, work-related decisions; requires work with no more than occasional changes in routine work setting; and can interact with coworkers, supervisors, and the public on an occasional basis throughout the workday.

(T. 20).

When crafting the RFC, the ALJ stated that he considered all Karen P.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). The ALJ added that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" as required by 20 C.F.R. §§ 404.1520c, 416.920c. (*Id.*).

At step four, the ALJ reasoned that Karen P. was unable to perform past relevant work. (T. 29). The ALJ reasoned that Karen P. is within the "closely approaching advances age" category, has at least a high school education, and that "transferability of job skills is not an issue." (T 29-30) (cleaned up).

At step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that Karen P. was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 29-30). To end, the ALJ found that Karen P. was not disabled. (T. 30).

## V.    ISSUES IN CONTENTION

Karen P. argues that the ALJ's improperly evaluated Dr. Rizk's medical opinions, failed to fully adopt Dr. Laird's opined limitations,

and improperly discounted Karen P.'s subjective reports of symptoms. (Karen P.'s Brief ("Pl.'s Br.") at 3 (Dkt. 11)). (Karen P.'s Reply Brief ("Rep. Br.") at 3-11 (Dkt. 18)). The Commissioner replied that the ALJ properly supported his opinion. (Defendant's Brief ("Def Br.") at 2 (Dkt. 17)).

## VI.   DISCUSSION

The Court affirms the ALJ's decision for the following three reasons. First, the ALJ properly analyzed Dr. Rizk's medical opinions. Second, the ALJ properly incorporated parts of Dr. Laird's limitations into the RFC. And third, the ALJ properly discounted Karen P.'s subjective complaints.

### A.   The ALJ properly found Dr. Rizk's opinions of Karen P.'s physical and mental limitations "less persuasive" and "unpersuasive."

The Court holds that substantial evidence supports the ALJ's decision to discount Dr. Rizk's medical opinions. When reviewing an ALJ's decision, the reviewing court must determine whether substantial evidence supports the ALJ's determinations. Here, the ALJ properly applied the regulations. And any error in the ALJ's analysis was

harmless. Altogether, the Court concludes that the ALJ properly supported his decision.

When evaluating medical evidence, ALJs' must consider all medical opinions and "evaluate their persuasiveness" under a five-factor framework. The five factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors to consider), (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability." *Lisa J.H. v. Comm'r of Soc. Sec.*, 5:24-CV-01247, 2025 WL 3669633, at *5 (N.D.N.Y. Nov. 18, 2025).

"Supportability" is an internal check: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1),  416.920c(c)(1). "Consistency" is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2). ALJs' must explicitly state how they considered both factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The ALJ properly analyzed the supportability of Dr. Rizk's opinion. To start, Dr. Rizk treated Karen P. every 3-4 months for 20 years. (T. 822). He completed three medical opinions concerning Karen P.'s physical limitations, and four medical opinions concerning Karen P.'s mental limitations.[3] Dr. Rizk opined that Karen P. would be off task more than 25% of the workday and absent more than 4 days per month. (T. 451-52). Dr. Rizk further opined that Karen P. could stand for one hour, walk for one hour, and sit for three hours total in an eight-hour workday, and that she needed the ability to sit and stand throughout the day. (T. 823). Dr. Rizk based his opinions on "tests, [and] treatments." (T. 452).

---

[3] Each opinion offers identical phrasing and opined limitations. Karen P. cites across eight opinions from Dr. Rizk as if each opinion offered different and reinforcing analysis and conclusions. They do not. In fact, each physical opinion that Dr. Rizk submitted checks the same boxes and offers substantially similar rationales. (451-54, 822-25, 906-909, 964-67). Each mental opinion does the same. (T. 443-46, 828-832, 911-14, 959-62). Dr. Rizk stated he had filled out the same paperwork multiple times. (T. 490).

When analyzing the supportability of Dr. Rizk's opinions, the ALJ reasoned that "the opinions amount to a 'check box' form without much additional explanation or citations to the evidence of record to support the degree of limits identified when evaluating supportability of the opinions." (T. 25, 27). The ALJ added that "there is nothing particularly vague about the opinions of Dr. Rizk that would require further clarification given the lack of evidence in the record to support the various marked and extreme limitations identified." (T. 25, 28) (cleaned up). Although, as Karen P. appears to argue, a treating source opinion may not "be discounted . . . based on the naked fact that it was provided in a check-box form." *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2021). But it may be discounted if it is not "supported by substantial evidence." *Schillo v. Saul*, 31 F.4th 64, 77 (2d Cir. 2022); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (stating that a standardized form without accompanying explanation is "only marginally useful for purposes of creating a meaningful and reviewable factual record").

Here, the ALJ rejected Dr. Rizk's opinions not on the naked fact that they were provided on a checkbox form, but because they were

provided on a checkbox form and were unsupported by Dr. Rizk's treatment notes. More specifically, the ALJ determined that Dr. Rizk's physical medical opinions were unsupported by treatment notes which showed "few positive clinical findings" on the exams Dr. Rizk conducted. (T. 26.) And the ALJ also noted that Dr. Rizk's mental opinions were not supported by his available records which showed that Karen P. was alert and oriented; had no significant behavioral limitations, no psychomotor changes, decreased energy or difficulty concentrating or thinking to support significant limitations. (T. 28). Because the ALJ took issue not simply with the fact that Dr. Rizk's opinions were in checkbox form, but that they were unsupported by Dr. Rizk's treatment notes, the ALJ's supportability analysis of Dr. Rizk's opinion passes muster.

The ALJ improperly analyzed the consistency of Dr. Rizk's opinions. While analyzing consistency, ALJs' "must look outside the medical opinion itself to evidence from other medical sources and nonmedical sources in the claim and will find the medical opinion more persuasive the more consistent it is with these external sources." *Kathleen A. v. Comm'r of the SSA*, No. 3:20-CV-1034, 2022 WL 673824,

14

*5 (N.D.N.Y. Mar. 7, 2022) (cleaned up). The ALJ noted that Dr. Rizk's opinions were inconsistent with those of the state agency medical consultants and the consultative examiner opinions. (T. 25, 28). But the ALJ offered mere citations to the state agency medical consultants and consultative examiner opinions with scant additional explanation. (T. 26, 28). And simply "identifying a lack of consistency but failing to explain the inconsistency in the context of the medical record as a whole prevents meaningful review." *James W. v. Kijakazi*, No. 8:20-CV-954 (DJS), 2022 WL 685288, at *4 (N.D.N.Y. Mar. 8, 2022) (cleaned up). As it stands, the ALJ did not properly articulate their consistency analysis for Dr. Rizk's opinions.

Be that as it may, ALJs' failing to explain the supportability and consistency of a medical opinion is procedural error. *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). And "if a procedural error occurred regarding the consistency factor," remand is unnecessary if "a searching review of the record assures" the Court "that the substance of the [regulation] was not traversed." *See Daniel M. S. v. Comm'r of Soc. Sec.*, No. 5:24-CV-379 (BKS/TWD), 2025 WL 957411 at *4 (N.D.N.Y. Mar. 31, 2025). Put simply, if the reviewing

15

court can "adequately 'glean' how the ALJ [implicitly] weighed the consistency and supportability factors," remand is not justified because the procedural error is considered harmless. *Davidia B. v. Comm'r of Soc. Sec.*, No. 21-CV-384, 2023 WL 5361000, at *5 (W.D.N.Y. Aug. 22, 2023).

The Court can glean how the ALJ analyzed that factor by looking to other portions of the ALJ's decision. Immediately following their assessment of Dr. Rizk's physical opinions, the ALJ explicitly discussed evidence that showed that Karen P. had lesser limitations than those that Dr. Rizk opined. (T. 26). For example, the ALJ pointed to opinions from state agency medical consultants, who reviewed all medical records on December 7, 2023, and April 11, 2024, which showed that Karen P. had no need for greater physical limitations or postural limitations. (*Id.*). The ALJ also noted that exams generally showed that Karen P. presented with a normal gait. (*Id.*). For mental limitations, the ALJ specifically cited, analyzed, and adopted limitations from medical opinions submitted by Drs. Laird and Long. (T. 27). The ALJ explained that Drs. Laird and Long produced their opinions after examinations of Karen P.. (*Id.*). All in all, the Court can glean how the

ALJ found Dr. Rizk's opinions inconsistent with the remainder of the record. *See Adam R. T. v. Comm'r of Soc. Sec.*, No. 21-CV-01170 (FJS/ATB), 2023 WL 1775689, at *4-5 (N.D.N.Y. Feb. 6, 2023) (holding that an ALJ's reference to consistency with the overall record without further explanation was, at most, harmless error because the court could glean ALJ's rationale from analysis of medical findings and other opinions).

At its core, the ALJ's opinion plainly shows that they considered the supportability of Dr. Rizk's medical opinions. *See* (T. 25-26, 27-28). And although the ALJ failed to properly articulate their consistency analysis concerning Dr. Rizk's opinions, this failure was harmless error. In consequence, remand is unwarranted. *See Earl H. L. v. O'Malley*, No. 5:23-CV-00643, 2024 WL 4442724, at *10 (N.D.N.Y. July 26, 2024) ("The ALJ's assessment of the persuasiveness of the medical opinions is, at face value, valid, and 'it is not the function of the reviewing court to reweigh evidence.'") (cleaned up).

## B.   The ALJ properly considered Dr. Laird's opined limitations while formulating the RFC

Substantial evidence supports the ALJ's decision to partially adopt Dr. Laird's opined limitations. ALJs' RFC determinations need

17

not fully match a single opinion in the record, so long as they are supported by substantial evidence. Here, the ALJ properly supported their RFC decision with substantial evidence. So, the Court sees no reason to disturb the ALJ's decision.

"RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville* 198 F.3d at 52). In rendering an RFC determination, ALJs' must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x at 53, 56 (2d Cir. 2013).

Even so, the RFC need not perfectly mirror any particular medical sources cited in the ALJ's decision. *See Angela G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1521 (ML), 2021 WL 22609, at *6 (N.D.N.Y. Jan. 4, 2021) (collecting cases) ("In formulating a plaintiff's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion.").

Provided the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC that is consistent with the record is not error. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is unnecessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

The ALJ properly adopted some limitations that Dr. Laird opined, but not others. The ALJ found Dr Laird's medical opinion "generally persuasive overall." (T. 27). And the ALJ largely incorporated the limitations that Dr. Laird opined. For example, the ALJ's RFC provided moderate limitations in Karen P.'s ability to interact with others, sustain concentration, make decisions, perform at a consistent pace, regulate emotions, control behavior, and maintain well-being—the precise limitations that Dr. Laird opined. (*Id.*). The ALJ only differed with Dr. Laird concerning Karen P.'s absences, off-task behavior, and limits in sustaining an ordinary routine and regular attendance because he found those limitations "speculative." (*Id.*).

19

Karen P. argues that the ALJ should have adopted all limitations that Dr. Laird opined. (Pl. Br. at 21). But even if the ALJ had done so, Karen P. would still not meet the disability criteria. Because "'moderate' limitations do not preclude an individual's ability to work." *Matta*, 508 F. App'x at 55 (affirming decision where "[t]he ALJ found that [the] plaintiff had moderate difficulties in concentration, persistence and pace and moderate difficulties in social functioning that limit [him] to simple, routine, low-stress, and unskilled tasks, which involve no more than minimal contact with co-workers, supervisors and the general public.")).

Regardless, Karen P. bears the burden to prove a more restrictive RFC than the RFC assessed by the ALJ—and she has not done so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (citation omitted). As it stands, there is no basis for the Court to second guess the ALJ's RFC determination.

## C.    The ALJ properly analyzed and discounted Karen P.'s subjective complaints

The ALJ properly rejected Karen P.'s subjective complaints. ALJs' are not required to accept a claimant's subjective complaints without question; they may exercise discretion in weighing the credibility of the

20

claimant's testimony against the record. Because the ALJ did so here, and supported his conclusions with substantial evidence, the Court sees no reason to disturb the ALJ's findings.

It is for ALJs' not courts, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Meyer v. Comm'r Soc. Sec.*, 794 F. App'x. 23, 26 (2d Cir. 2019) (citations omitted). The ALJ must "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, No. 8:16-CV-157 (TWD), 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (cleaned up).

Evaluating symptoms involves a two-step process. Initially, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). If so, then the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted

as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (cleaned up). If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must look to other evidence. *See Cichocki*, 534 F. App'x at 76. Such other evidence includes the claimant's subjective complaints. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("an important element in the adjudication of [Social Security] claims, and must be thoroughly considered in calculating the RFC of a claimant.").

The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms;  and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ correctly applied the two-step process. First, the ALJ found that Karen P. had a severe impairment that could reasonably be expected to produce the pain and other symptoms that she alleged. (T. 20). Second, the ALJ evaluated Karen P.'s description of her physical and mental ailments (T. 21-23).

For physical symptoms, the ALJ compared Karen P.'s statements of severe pain, to her descriptions of mild to moderate pain from her treating physician's notes. (T. 21-22). The ALJ also compared Karen P.'s claim that physical therapy offered no relief with "physical therapy progress notes that showed some improvement in symptoms or making gains towards short-term and long-term treatment goals, even if 'slowly.'" (T. 22) (citing T. 919, 921).

For mental symptoms, the ALJ discussed how medication elicited positive responses. (*Id.*). The ALJ added that Karen P.'s current psychological symptoms appear well-controlled with Prozac. (*Id.*). The ALJ noted that Karen P. showed no thoughts toward suicide and had "not required recurrent emergency department visits, prolonged

23

inpatient psychiatric hospitalization, a day treatment program, or placement in a board and care facility for uncontrolled psychiatric symptoms." (*Id.*).

The ALJ also concluded that Karen P.'s engagement in daily activity belied her request for greater physical and mental limitations. (T. 23). He noted that Karen P. cared for multiple pets including cleaning cages, feeding, and changing their water; did laundry; vacuumed for ten minutes before taking a 20–30-minute break; made her bed; cooked daily for up to one hour; and washed dishes. (T. 23). Responding to Karen P.'s self-described difficulty socializing, the ALJ noted that Karen P. lives with her boyfriend, does not consistently complain of difficulty socializing, goes to the grocery store, and attends medical appointments. (T. 23). The ALJ added that Karen P. can engage in activities that include performing simple and routine tasks, paying attention, and understanding written information such as caring for pets, doing laundry, reading, driving a motor vehicle, paying recurring bills, and shopping for groceries. (*Id.*).

Boiled down, the ALJ analyzed the subjective testimony that he found inconsistent with the objective medical evidence and explained

his determination with sufficient specificity to meet the deferential substantial evidence standard. *See Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) (stating that a court has "no reason to second-guess the credibility finding in a case where the ALJ identified specific record-based reasons for his ruling.") (cleaned up). In consequence, the Court sees no need to disturb the ALJ's determination.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Karen P.'s motion for judgment on the pleadings (Dkt. 11) be **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 17) be **GRANTED**; and it is further

**ORDERED**, that the ALJ's decision be **AFFIRMED**.

Dated: February 19, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge